_____

No. 95-1315
_____

United States of America,          *
                                   *
          Appellee,        *
                                   * Appeal from the United States
   v.                     * District Court for the
                                   * Western District of Arkansas
Karl Edward Nicolace,        *
                                   *
          Appellant.      *

_____

Submitted:  November 14, 1995

Filed:  July 9, 1996
_____

Before McMILLIAN, FLOYD R. GIBSON, and LOKEN, Circuit Judges.
_____

McMILLIAN, Circuit Judge.

Karl E. Nicolace appeals from a final judgment entered in the United States District Court[1] for the Western District of Missouri, after he pled guilty to aiding and abetting an attempt to possess with the intent to distribute cocaine in violation of 21 U.S.C. § 846 and 18 U.S.C. § 2.  The district court sentenced Nicolace under the federal sentencing guidelines to 188 months imprisonment, eight years supervised release and a special assessment of $ 50.00.  For reversal, Nicolace argues that the district court erred in (1) considering a conviction that had been "set aside" pursuant to the Federal Youth Corrections Act (FYCA) in calculating his criminal history category; (2) finding a drug conspiracy to be a "controlled substance offense" under the career offender sentencing guidelines; and (3) finding he had failed to make a threshold

_____

[1]The Honorable D. Brook Bartlett, Chief Judge, United States District Court for the Western District of Missouri.

showing that the government acted irrationally or in bad faith in refusing to file a motion for downward departure for substantial assistance. For the reasons discussed below, we affirm the judgment of the district court.

## Background

In 1981 Nicolace was convicted of conspiracy to distribute cocaine in the United States District Court for the District of Kansas. He was sentenced pursuant to FYCA, 18 U.S.C. § 5010(b), and was subsequently paroled in 1982. His conviction was set aside pursuant to 18 U.S.C. § 5021. In 1991 Nicolace was convicted of two counts of distribution of cocaine in the United States District Court for the District of Kansas. Following an extended period of cooperation with the authorities, Nicolace was sentenced to six months imprisonment and three years supervised release. He was placed on supervised release in October 1992.

On May 13, 1993, Nicolace drove to the Marriott Airport Hotel in Kansas City, Missouri, and bought two kilograms of cocaine for approximately $42,000 from an FBI confidential informant. Two additional kilograms were "fronted" or provided on consignment to Nicolace. Nicolace was arrested immediately and transported to a local hospital after experiencing an anxiety attack. Shortly thereafter, David Jones, a person who had been assisting Nicolace, was also arrested in the Marriott parking lot.

After his release from the hospital, Nicolace was questioned by the FBI and indicated his willingness to cooperate. However, the FBI began to doubt Nicolace's candor after several months of meetings with Nicolace had yielded no beneficial results.

On June 8, 1993, Nicolace and Jones[2] were indicted and charged with one count of attempted possession with intent to distribute cocaine in violation of 21 U.S.C. § 846 and 18 U.S.C. § 2. Thereafter, Nicolace's brother, Paul Nicolace, approached the FBI and offered to cooperate with the authorities in order to assist his brother. Paul Nicolace was at that time on probation on state drug charges. The FBI told Paul Nicolace that it could not direct him as an informant but that it would accept any information he might voluntarily provide. The FBI also doubted Paul Nicolace's candor, and the information he provided yielded no results. In August 1993, the FBI told Paul Nicolace that neither it nor the U.S. Attorney's Office was interested in his cooperation. On November 23, 1993, Nicolace pled guilty pursuant to a written plea agreement. The plea agreement did not contain any provisions regarding cooperation with the government or the possible filing of a motion for downward departure based on substantial assistance.

The district court held three sentencing hearings for Nicolace. At the first sentencing hearing on February 18, 1994, the district court found that Nicolace was a career offender, after rejecting Nicolace's argument that his set-aside FYCA conviction for conspiracy to distribute cocaine should not be counted for purposes of career offender status. In addition, at this hearing Nicolace raised the issue of whether the government had acted unreasonably in refusing to file a motion for downward departure on the basis of substantial assistance. The government argued that it had refused Nicolace's offer of cooperation and that Nicolace had provided no substantial assistance.

At the second sentencing hearing on April 22, 1994, the district court held that it had the authority to review the government's refusal to move for downward departure for substantial

---

[2]Jones subsequently entered into a plea agreement with the government.

assistance if the refusal was based on an unconstitutional motive or a reason not rationally related to any legitimate end.

On September 21, 1994, an Addendum to the Presentence Report was filed by the U.S. Probation Officer.  The Probation Officer noted that a proposed amendment to the U.S.S.G. § 4B1.1 application note would make Nicolace eligible for a sentencing range of 188 to 235 months, rather than 262 to 327 months.[3]  The amendment became effective on November 1, 1994.

At the final sentencing hearing on January 18, 1995, the district court found that the government had not acted irrationally in refusing to file a motion for downward departure for substantial assistance.  The district court sentenced Nicolace to 188 months imprisonment, eight years supervised release and a special assessment of $50.00.  This appeal followed.

**Discussion**

**I.**

For reversal, Nicolace first argues that the district court erred in using a prior federal narcotics conviction which had been set aside pursuant to FYCA, 18 U.S.C. § 5021 (repealed 1984),[4] in

---

[3]The proposed amendment defined the term "offense statutory maximum" as the "maximum term of imprisonment authorized for the offense of conviction that is a crime of violence or controlled substance offense, not including any increased in the maximum term under a sentencing enhancement provision that applies because of the defendant's prior criminal record."  U.S.S.G. § 4B1.1, comment. (n.2).

[4]18 U.S.C. § 5021 provided:

> (a) Upon the unconditional discharge by the commission of a committed youth offender before the expiration of the maximum sentence imposed upon him, the conviction shall be

automatically set aside and the Commission shall issue to the youth

-4-

calculating his criminal history category. He contends that the term "set aside" is synonymous with the term "expungement" and that his prior conviction should therefore not have been considered by the district court. We disagree.

The instructions and definitions for computing a defendant's criminal history score are set forth in U.S.S.G. § 4A1.2. "Expunged" convictions are not counted. U.S.S.G. § 4A1.2(j). Convictions which have been "set aside," however, are included in calculating the criminal history score. U.S.S.G. § 4A1.2, commentary, application note 10.

> A number of jurisdictions have various procedures pursuant to which previous convictions may be set aside or the defendant may be pardoned for reasons unrelated to innocence or errors of law, e.g., in order to restore civil rights or to remove the stigma associated with a criminal conviction. Sentences resulting from such convictions are to be counted. However, expunged convictions are not counted.

The FYCA was enacted to encourage a youth's evolution into productive citizenship by providing youthful offenders with a "fresh start." Doe v. Webster, 606 F.2d 1226, 1234 (D.C. Cir. 1979) (FYCA was intended to give youthful offenders "an opportunity

offender a certificate to that effect.

> (b) Where the youth offender has been placed on probation by the Court, the court may, in its discretion unconditionally discharge such youth offender from probation prior to the expiration of the maximum period of probation theretofore fixed by the court which discharge shall automatically set aside the conviction, and the court shall issue to the youth offender a certificate to that effect.

18 U.S.C. § 5021.

to clean their slates to afford them a second chance, in terms of both jobs and standing in the community"). Convictions set aside for this reason should be included when calculating criminal history. U.S.S.G. § 4A1.2; see also United States v. McDonald, 991 F.2d 866, 872 (D.C. Cir. 1993) (juvenile conviction that had been set aside under District of Columbia Youth Rehabilitation Act should be counted in defendant's criminal history, because if a juvenile offender turns into a recidivist, "[s]ociety's stronger interest is in punishing an unrepentant criminal").

Therefore, we hold that the district court properly included Nicolace's prior federal narcotics conviction, which had been "set aside" pursuant to 18 U.S.C. § 5021, in the calculation of his criminal history category.

## II.

Nicolace next argues that the prior conviction set aside under FYCA should not have been counted towards his career offender status because that conviction was for conspiracy. He argues that drug conspiracy is not one of the predicate offenses listed in U.S.S.G. § 4B1.1, the career offender guideline.[5]

Nicolace's contentions are without merit, in light of this court's recent en banc decision in United States v. Mendoza-Figueroa, 65 F.3d 691, 692-94 (8th Cir. 1995) (en banc) (Mendoza

---

[5]U.S.S.G. § 4B1.1 provides:

> A defendant is a career offender if (1) the defendant was at least eighteen years old at the time of the instant offense, (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense, and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

-6-

Figueroa II), cert. denied, 116 S. Ct. 939 (1996), holding that the sentencing commission had not exceeded its statutory authority by including drug conspiracy offenses in its definition of predicate offenses for career offender status under U.S.S.G. § 4B1.1.  See United States v. Mendoza-Figueroa I, 28 F.3d 766, 766-68 (8th Cir. 1994) (following United States v. Price, 990 F.2d 1367, 1369-70 (D.C. Cir. 1993) (Price)).  We therefore hold that the district court properly included Nicolace's drug conspiracy in determining his career offender status.

## III.

Finally, Nicolace challenges the district court's finding that he failed to make a threshold showing that the government had acted irrationally or in bad faith in refusing to file a motion for downward departure for substantial assistance.  The government's refusal to file a substantial-assistance motion is reviewable only when the defendant makes a substantial threshold showing that the refusal was irrational or based on an unconstitutional motive.  Wade v. United States, 504 U.S. 181, 185-87 (1992).  In the present case, the district court concluded that Nicolace had failed to make such a showing and therefore declined to review the government's decision.  See I Sentencing Trans. 81-82.  We agree that Nicolace failed to meet his threshold burden of showing that the government had acted irrationally or in bad faith in refusing to move for a substantial-assistance downward departure.  We note that the FBI questioned Nicolace's candor during its discussions with Nicolace following his May 1993 arrest.  Although Nicolace had identified two persons as drug traffickers, he was unable to contact either individual, and nothing developed from the information he provided.  Similarly, the information Paul Nicolace gave the government in an attempt to help his brother had also proven to be of little use.  Therefore, in August 1993, the government filed a notice to enhance punishment and informed Paul Nicolace that it was not interested in pursuing his cooperation.  In addition, Nicolace's plea agreement

did not contain any provisions regarding cooperation with the government or the possible filing of a substantial assistance motion.

Therefore, we hold that the district court did not err in finding that Nicolace had failed to make a substantial threshold showing that the government's refusal to file a motion for downward departure for substantial assistance was irrational or based on an unconstitutional motive.

## Conclusion

We hold that the district court did not err in including Nicolace's prior conviction, which had been set aside pursuant to FYCA, in the determination of his criminal history category and career offender status. We further hold that the district court properly declined to review the government's refusal to file a substantial-assistance motion for downward departure, because Nicolace had failed to show that the government had acted irrationally or based upon an unconstitutional motive. Accordingly, the judgment of the district court is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.